The STATE of Texas, Appellant,

v.

James Clive BELCHER, Appellee.

Nos. 14–04–00968–CR, 14–04–00969–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 27, 2005.

Rehearing Overruled Jan. 19, 2006.

444

Joel H. Bennett, Galveston, for appellant.

Louis McCarnes, Galveston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal by the State of the trial court's order granting appellee James Clive Belcher's motion for new trial. The State's only argument on appeal is that the trial court erred in granting Belcher's motion for new trial because Belcher allegedly did not show properly preserved error that would have entitled him to reversal of his conviction on appeal had the trial court not granted a new trial. Because this argument is premised on an incorrect standard of review and otherwise lacks merit, we overrule the State's only challenge on appeal and affirm the trial court's order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Belcher was charged with aggravated robbery and aggravated kidnapping. At his trial on these charges, the trial court shuffled the jury panel before voir dire began. Prior to the jury shuffle, Belcher informed his counsel that he knew panel member David Elliott. Belcher's counsel made a notation on his prospective juror list to strike Elliott from the panel. During voir dire, Belcher's counsel asked the panel if anyone knew Belcher. One prospective juror, Melinda Bahr, raised her

hand and was then asked specific questions regarding her acquaintance with Belcher. Elliott did not raise his hand, and Belcher's counsel did not ask him any specific questions. Belcher's counsel unsuccessfully moved to strike Bahr for cause and then requested an additional peremptory challenge to use against her. The trial court denied both requests.

After both sides concluded questioning of the venire members, the trial court ordered a recess to allow the parties and their counsel to decide how to exercise their peremptory strikes and to present these strikes to the court. As sheriff's deputies were escorting Belcher and his counsel to a location where Belcher could confer with his counsel about the peremptory strikes, Belcher and one of the deputies had a confrontation. The deputy with whom Belcher had the confrontation obtained a stun belt and attached it to Belcher's body.[1] Although Belcher did not act in an aggressive or threatening manner, shortly after the stun belt was attached, one of the deputies accidentally activated the stun belt and stunned Belcher. Because he had been stunned, Belcher was not able to confer with his counsel in deciding how to exercise his peremptory strikes.[2]

Venire member Elliott was not stricken either for cause or peremptorily. When

---

1. A stun belt is a device placed around a defendant's midsection that uses an electric shock to temporarily disable the defendant if his actions pose a security threat. The belt is controlled by a remote device held by a security official in the courtroom. If the belt is activated, the defendant will receive a powerful electric shock sufficient to temporarily incapacitate him. *See United States v. Durham,* 287 F.3d 1297, 1301 (11th Cir.2002).

2. Because Belcher prevailed in the trial court on his motion for new trial, we must presume the trial court resolved any disputed fact is-

sues in Belcher's favor, and we are required to defer to these implied findings of fact as long as the record supports them. *See State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim. App.1999). In any event, the State has not asserted in the trial court or on appeal that Belcher was not stunned, and a sheriff's deputy corroborated Belcher's testimony by testifying at the new-trial hearing that he saw Belcher being stunned by the stun belt when one of the other deputies accidentally flipped both of the switches on the stun belt's control box.

the jury was seated, the judge asked if there were any objections to the jury being sworn, and Belcher's counsel did not object. At some point at the beginning of trial, Belcher informed his counsel that Elliott was on the jury. Because he had been stunned, Belcher did not notice that his counsel had failed to exercise a peremptory strike against Elliott until the jury had been sworn and the first witness had been called. Belcher's counsel thereafter informed the trial court that Belcher and Elliott knew each other. Belcher's counsel told the court that he had failed to notice that Elliott was going to be seated on the jury until after he was actually seated on the jury. The following morning, the trial court permitted defense counsel to question Elliott outside the presence of the jury. Elliott denied that he knew Belcher. Belcher and Belcher's girlfriend both testified that Belcher and Elliott had gone to school together and knew each other. Belcher's counsel requested to continue the trial with eleven jurors, but the trial court denied this request.

Trial proceeded, and the jury convicted Belcher of both aggravated robbery and aggravated kidnapping. On May 17, 2000, the trial court sentenced Belcher to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On May 24, 2000, Belcher filed a motion for new trial. On June 16, 2000, he filed an amended motion for new trial. Belcher filed both of these pleadings timely.

On July 27, 2000, the trial court held an evidentiary hearing on this motion for new trial in which all of the facts and circum-stances surrounding the motion for new trial were addressed. On August 1, 2000, the trial court attempted to grant Belcher's motion for new trial; however, the court no longer had authority to do so because the motion had been overruled by operation of law the day before, which was the seventy-fifth day after the trial court imposed sentence. *See* TEX.R.APP. P. 21.8(a), (c). The State appealed this order, and this court vacated it based on the trial court's lack of authority. *See State v. Belcher,* Nos. 14–00–01197–CR & 14–00–01198–CR, 2001 WL 306181 (Tex.App.-Houston [14th Dist.] Mar. 29, 2001, pet. ref'd) (not designated for publication).

On Belcher's first appeal, this court, in a plurality decision, held that, based on the ineffective assistance of Belcher's trial counsel, Belcher was entitled to a new hearing on his motion for new trial. *See Belcher v. State,* 93 S.W.3d 593, 600–01 (Tex.App.-Houston [14th Dist.] 2002 pet. dism'd) (order based on plurality decision).

After a second hearing on Belcher's motion for new trial, the trial court granted Belcher a new trial based on the improper seating of Elliott on the jury.[3] In its order, the trial court explained the impropriety in seating Elliott on the jury as follows: (1) the testimony of Curtis Crumby[4] makes it clear that Elliott was not truthful when he failed to respond to Belcher's counsel's question of whether any of the venire members knew Belcher; (2) Elliott's failure to be truthful deprived Belcher's counsel of the opportunity to explore any bias Elliott had; (3) Belcher's counsel, by his own admission, erred in

---

3. This court abated Belcher's appeal pending the second new trial hearing; however, after the trial court granted Belcher a new trial, we dismissed Belcher's appeal as moot. *See Belcher v. State,* Nos. 14–00–00811–CR & 14–00–00812–CR, 2004 WL 1946073 (Tex.App.- Houston [14th Dist.] Sept. 2, 2004, no pet.) (not designated for publication).

4. Curtis Crumby went to the same high school as Belcher and Elliott, and he used to be the next-door neighbor of Belcher in the 1970s.

failing to use a peremptory strike against Elliott after being instructed to do so by Belcher; and (4) Belcher was accidentally stunned by a stun belt he was wearing, depriving Belcher of his right to be present at trial while the peremptory strikes were being exercised and preventing him from participating in an important phase of the trial, probably contributing to his lawyer's error in failing to exercise a peremptory strike against Elliott. The State filed this appeal.

## II. Standard of Review

■ The granting of a new trial rests within the sound discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993) (four-justice plurality op.). An appellate court will reverse the trial court's decision only when that decision is so clearly wrong as to lie outside the zone in which reasonable persons might disagree. *See Gonzalez*, 855 S.W.2d at 695 n. 4. An appellate court is not to substitute its judgment for that of the trial court; rather the appellate court's role is to examine the record to determine whether the trial court granted a new trial without reference to any guiding rules or principles or, in other words, whether the trial court's decision was arbitrary or unreasonable. *See Lewis*, 911 S.W.2d at 7. The appellate court is to presume the trial court correctly granted a new trial, and the State has the burden to establish the contrary. *See Lee v. State*, 167 Tex.Crim. 608, 322 S.W.2d 260, 262

(1958). If no findings of fact or conclusions of law were made or requested by the trial court, the trial court's judgment granting a new trial must be upheld if any appropriate ground exists to support it. *State v. Read*, 965 S.W.2d 74, 77–78 (Tex. App.-Austin 1998, no pet.).

## III. Analysis

**A. For the trial court to have properly granted Belcher's motion for new trial, did Belcher have to show properly preserved error that would have entitled him to reversal on appeal from his conviction had the trial court not granted a new trial?**

■ The State's sole argument on appeal is that the trial court erred in granting a new trial because Belcher did not show properly preserved, reversible error under the legal standard enunciated in *Gonzales v. State*, 3 S.W.3d 915, 916–17 (Tex.Crim.App.1999). In its appellate brief, the State never mentions the abuse-of discretion standard of review that we must apply in favor of the trial court's granting of a new trial. Further, the State does not cite any cases involving an appeal from a trial court's granting of a motion for new trial. The State fails to mention that, because Belcher prevailed on his motion for new trial in the court below, we must presume the trial court resolved any disputed fact issues in Belcher's favor, and we are required to defer to these implied findings of fact, if supported by evidence in the record.[5] *See State v. Mu-*

---

**5.** Indeed, several statements the State makes contradict this standard of review. For example, the State mentions an alleged statement by Belcher that he and Elliott were best friends, and the State asks the court to consider how Belcher could have been harmed by having his best friend on the jury. However, Belcher also testified that Elliott was the best friend of Belcher's next-door neighbor

during childhood and that Belcher and Elliott were childhood friends. Belcher also testified that Elliott would know about his prior conviction and eight-year sentence for aggravated assault. The State also asserts that, if we believe Elliott, then Belcher and Elliott never knew each other. However, we presume the trial court found the facts in favor of its ruling, and there is evidence to support the

*noz,* 991 S.W.2d 818, 821 (Tex.Crim.App. 1999). None of the cases cited by the State hold that a trial court may grant a new trial only after the movant shows error that would require reversal upon appeal from the conviction in question. The State's argument misses the mark by equating the standard of review on direct appeal from a conviction with the trial court's exercise of discretion in determining whether to grant a motion for new trial.

In *State v. Gonzalez,* the Texas Court of Criminal Appeals affirmed the intermediate court's affirmance of a new-trial order. *See Gonzalez,* 855 S.W.2d at 693. In that case Gonzalez did not show error that would require reversal upon appeal from the conviction in question. *See id.* at 693–94. Rather, Gonzalez simply showed that the testimony of a missing witness—his uncle—could have had a substantial impact on the trial court's sentencing decision and that his uncle was unable to testify at the original sentencing hearing. *See id.* The trial court determined that it was in the interest of justice to grant Gonzalez a new trial and to hear the uncle's testimony at a new sentencing hearing. *See id.* There is no mention in the *Gonzalez* opinion that Gonzalez exercised due diligence, was unable to obtain his uncle's testimony by affidavit or other means, or that Gonzalez sought postponement of the sentencing hearing so that his uncle could be present. *See id.* In *Gonzalez,* had the trial court denied the motion for new trial and had Gonzalez appealed, there would have been no reversible error based on the uncle's failure to testify at the sentencing hearing. *See id.*

Furthermore, the *Gonzalez* opinion approves the intermediate court's reasoning in relying on two civil cases for the proposition that a trial court, in its discretion, may grant a new trial in the interest of justice. *See id.* at 694 (citing *State v. Gonzalez,* 820 S.W.2d 9, 11 (Tex.App.-Dallas 1991), *aff'd,* 855 S.W.2d 692 (Tex.Crim. App.1993) and approving of the intermediate court's reliance on *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) and *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985)). In the two civil cases cited in *Gonzalez,* the trial court granted a new trial without any finding that reversible error had occurred, and there is no indication that the reason for granting the new trial would have constituted reversible error on appeal if a new trial had not been granted. *See Champion Int'l Corp.,* 762 S.W.2d at 899; *Johnson,* 700 S.W.2d at 918. Other courts of appeals also have held that the existence in the record of reversible error is not a prerequisite for granting a new trial. *See State v. Kelley,* 20 S.W.3d 147, 155 (Tex.App.-Texarkana 2000, no pet.) (holding that, even though record did not show any harm from trial counsel's deficient performance in failing to object to seating of juror as to whom counsel had exercised a peremptory strike, trial court still had discretion to grant a new trial based on trial counsel's deficient performance in this regard); *State v. Trevino,* 930 S.W.2d 713, 716 (Tex.App.-Corpus Christi 1996, pet. ref'd) (holding reversible error need not be shown as to trial court's charge, which omitted an accomplice-witness instruction, for the trial court to have discretion to grant a new trial).

It would be improper to analyze this case as if it were an appeal from a conviction, rather than an appeal from the granting of a new trial. Even if on appeal from a conviction Belcher would not have been able to obtain a reversal based on the

trial court's implied findings. *See Munoz,* 991 S.W.2d at 821.

seating of Elliott on the jury, this does not mean that the trial court abused its discretion in granting a new trial. Therefore, the State's only argument on appeal lacks merit.

## B. Did the trial court abuse its discretion in granting a new trial?

■ Although we have rejected the State's only argument on appeal, we note that, even if the State had argued that the trial court abused its discretion in granting Belcher a new trial, the result would not be different. For at least 130 years, Texas trial courts have had the discretion to grant new trials in the interest of justice. *See Gonzalez,* 855 S.W.2d at 694; *Mullins v. State,* 37 Tex. 337, 339–40 (1872) (holding of the Texas Supreme Court exercising criminal jurisdiction). The discretion of a Texas trial judge to order a new trial when she concludes the trial over which she has presided has resulted in a miscarriage of justice is an important part of our judicial system. *See Gonzalez,* 855 S.W.2d at 694 (citing with approval statement by *Mullins* court that discretion of district courts to grant new trials is a crucial protection that these courts should not hesitate to use whenever justice has not been attained); *Trevino,* 930 S.W.2d at 716 (stating that, when a trial judge determines that justice has not been done, that judge has not only the power but also the obligation to order a new trial and that, since appellate courts lack this power, it is imperative that the trial judge exercise this power when necessary).

As detailed above, viewing the evidence in favor of the trial court's ruling, the trial court was presented with an unusual fact pattern:

● Belcher knew Elliott as a childhood friend, and Elliott would know about Belcher's past criminal activity. Nonetheless, when Belcher's counsel asked the venire members if any of them knew Belcher, Elliott did not raise his hand, and later he specifically stated under oath that he did not know Belcher.[6]

● Belcher instructed his counsel to exercise a peremptory strike against Elliott, and Belcher's counsel, by his own admission, erred in not carrying out his client's instructions to exercise a strike against Elliott.

● As Belcher was going to confer with his trial counsel about how Belcher should exercise his peremptory strikes, one of the deputies accidentally activated the stun belt that had been attached to Belcher's body, thus stunning Belcher. Because he had been stunned, Belcher was not able to confer with his counsel in deciding how to exercise his peremptory strikes, and Belcher did not notice that his counsel had failed to exercise a peremptory strike against Elliott until the jury had been sworn and the first witness had been called.

This was not a typical voir dire. Viewing the evidence under the applicable standard of review, Juror Elliott was not truthful, and despite Belcher's instruction to exercise a peremptory strike against Elliott, Belcher's counsel mistakenly failed to do so.[7] Furthermore, Belcher was unable to point out his counsel's mistake or re-

---

6. Elliott's untruthfulness makes it unlikely that any additional questioning of Elliott during voir dire would have produced evidence sufficient to justify striking him for cause.

7. Having apparently come to the conclusion that Elliott had not been truthful in order to serve on the jury, the trial court reasonably may have concluded that this cast serious doubt on whether Elliot was an unbiased member of the jury.

mind his counsel to exercise a peremptory strike against Elliott because Belcher was stunned just before the peremptory-strike phase of voir dire.

One of the most basic rights guaranteed by the Confrontation Clause is the defendant's right to be present at every stage of his trial. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Although physically present, Belcher was incapacitated and unable to participate in an important part of his trial—the exercise of his peremptory strikes. Belcher's accidental stunning also interfered with his ability to confer with his counsel during the exercise of his peremptory strikes. *See United States v. Durham,* 287 F.3d 1297, 1305–06 (11th Cir. 2002) (noting court's serious concern regarding stun belt's capacity to disrupt defendants' constitutional rights to be present at trial and to participate in their defense). One federal court of appeals has stated that the accidental triggering of a defendant's stun belt during trial "would be an egregious breach of both appropriate courtroom decorum and [the defendant's] most fundamental trial rights." *See id.* at 1307.

Based on the unusual facts and circumstances that led to the seating of Elliott on the jury, the trial court did not abuse its discretion in granting Belcher a new trial.[8] *See Kelley,* 20 S.W.3d at 155 (holding that, even though record did not show any prejudice from trial counsel's deficient performance in failing to object to seating of juror as to whom counsel had exercised a peremptory strike, trial court still had dis-

cretion to grant a new trial based on trial counsel's deficient performance in this regard); *State v. Gill,* 967 S.W.2d 540, 542–43 (Tex.App.-Austin 1998, pet. ref'd) (holding trial court did not err in granting new trial in interest of justice because evidence showed the integrity and reliability of the trial had been undermined by defense counsel's health problems, senility, hearing loss, and reduced vision, regardless of whether defense counsel's conduct violated both prongs of the *Strickland* test for ineffective assistance of counsel); *Trevino,* 930 S.W.2d at 716 (holding that trial court did not abuse its discretion in granting new trial based on unobjected-to failure of jury charge to contain accomplice-witness instruction). We overrule the State's sole issue on appeal.

## IV. CONCLUSION

To prevail on his motion for new trial, Belcher did not have to prove to the trial court that properly preserved error occurred during his trial that would entitle him to reversal on appeal from his conviction. Because the State's argument is premised on an incorrect standard of review and is without merit, we overrule the State's sole issue and affirm the trial court's order granting a new trial. The unusual facts of this case show that the trial court's decision to grant Belcher a new trial was not so clearly wrong as to lie outside the zone in which reasonable persons might disagree.

---

8. The State has not argued on appeal that the trial court granted a new trial based on a ground not asserted in the motion for new trial, so that issue is not before us. Even if it were, presuming for the sake of argument that a trial court granting a motion for new trial is limited to the grounds stated in the motion, the trial court granted a new trial based on injustice regarding the seating of Elliott on the jury, which was a ground asserted in the motion for new trial. The motion for new trial alleged sufficient grounds to apprise the trial court and the State as to why Belcher believed he was entitled to a new trial. *See Gonzalez,* 855 S.W.2d at 694–95.