Opinion filed March 9, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed March 9, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00035-CR 

                                                    __________

 

                                       STATE OF TEXAS, Appellant

 

                                                             V.

 

                                      CLAUDIA
ZAMORA, Appellee

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                                Trial
Court Cause No. CR17-375

 



 

                                                                   O
P I N I O N

 

 Claudia
Zamora was convicted by a jury of intentionally or knowingly causing serious
bodily injury to a child fourteen years of age or younger and was sentenced to
thirty-five years in prison.  Appellee filed
a motion for new trial based upon the results of a paternity test that was
completed after trial and that revealed that appellee=s
brother was the father of her son.  The
trial court granted the motion and ordered a new trial.  The State has appealed that decision.  We find no error and affirm.

                                                               
Background Facts

Appellee and her son Omar Zamora lived with her
brother Juan Zamora, his wife Aurelia Zamora, and their three children.  Appellee had lived with them since 2001.

On June 29, 2004, Juan and Aurelia Zamora went to
work and left appellee to babysit their children, including their
five-month-old daughter Jennifer Zamora. 
That morning Jennifer was taken to Brownwood Regional Hospital for
emergency treatment.  Dr. Scott Morris,
the treating physician, testified that Jennifer was unconscious and having a
seizure.  She was not moving her eyes,
had no gag reflex, and had a large hematoma the size of a softball on the back
of her head.  Tests confirmed that
Jennifer had suffered a large fracture on the back of her skull.  Dr. Morris believed these injuries were the
result of non-accidental trauma and were life threatening.  Jennifer was taken from Brownwood Regional to
Cook Children=s
Hospital in Fort Worth for further treatment.

Dr. Alan Norman, a pediatric ophthalmologist in
Fort Worth, examined Jennifer at the request of the pediatric intensive care
unit.  He diagnosed her with retinal
hemorrhages and a schisis cavity or a splitting of the retina.  Dr. Norman testified that Jennifer=s injuries were caused by
non-accidental trauma and were most likely sustained while being violently
shaken.

Child Protective Services (CPS) investigated the
incident.  A CPS investigator interviewed
appellee.  Appellee offered inconsistent
explanations for how Jennifer had been injured. 
Appellee was interviewed again on a second date.  She continued to provide inconsistent
explanations before finally admitting that she had become angry with Jennifer
and thrown her down on the floor three times. 
Appellee then was taken to the Brownwood Law Enforcement Center.  There she waived her rights and provided a
written confession.

Jennifer survived, but she has permanent brain
damage and neurological impairments.  Dr.
Morris compared her brain damage to the damage caused by having strokes
throughout the brain.  He indicated that
her prognosis is poor and that he did not think she would be able to walk,
talk, or perform normally








Prior to trial, appellee=s
counsel filed a motion for examination regarding insanity.  In that motion, he requested that an expert
be appointed to examine appellee and that the court include the insanity
defense in its charge.  The trial court
granted the motion and appointed Dr. Cheryl Hurd.  Dr. Hurd examined appellee in jail and
provided the trial court with a written report of her findings. 

The State called Dr. Hurd as a witness.  Dr. Hurd testified that in her opinion
appellee was sane at the time of the offense. 
On cross-examination, Dr. Hurd testified that she was unaware of the CPS
allegation that Juan was Omar=s
father.  She testified that incest would
affect appellee=s mental
state in different ways.  These included
various forms of dissociative behavior such as multiple personality disorder
and depersonalization disorder.  Dr. Hurd
testified that the effect of sexual abuse or incest on appellee=s mental state was not dependent on
whether the conduct was consensual or forced, that the age difference between
appellee and her brother would be an important factor, and that appellee=s son was probably conceived when she
was younger than seventeen.

Appellee was twenty years old at the time of
trial, and Juan was thirty-two.  Juan
testified that appellee was already pregnant when she came to live with them
and that he did not know who Omar=s
father was.  Juan testified that appellee
told him the father was someone from Mexico. 
Juan did acknowledge that he had been ordered to take a blood test, but
he denied ever mistreating appellee. 
Aurelia also testified that she did not know who Omar=s father was and called the allegation
that her husband was Omar=s
father a Alie.@

The jury convicted appellee on November 18, 2004,
of intentionally or knowingly causing serious bodily injury to a child fourteen
years of age or younger and sentenced her to thirty-five years in prison.  CPS paternity tests were completed in
December.  These indicated that Juan was
Omar=s
father.  Appellee filed a motion for new
trial based upon the paternity test results. 
The trial court held a hearing and granted appellee a new trial.

                                                             Issues

In three issues, the State challenges the trial
court=s
decision to grant a new trial.  The State
contends the trial court abused its discretion (1) by granting appellee=s motion for new trial based upon newly
discovered evidence, (2) by granting appellee=s
motion for new trial in the interest of justice, and (3) by refusing to allow
the State to call appellee=s
attorney as a witness at the hearing on the motion for new trial.








                                                              Standard
of Review

A trial court=s
decision to grant a new trial is reviewed under an abuse of discretion
standard.  Keeter v. State, 74
S.W.3d 31, 37 (Tex. Crim. App. 2002).  An
appellate court will reverse the trial court=s
decision only when that decision is so clearly wrong as to lie outside the zone
in which reasonable persons might disagree. 
State v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App.
1993).  An appellate court may not
substitute its judgment for that of the trial court.  The appellate court=s
role is to examine the record to determine whether the trial court granted a
new trial without reference to any guiding rules or principles or, in other
words, whether the trial court=s
decision was arbitrary or unreasonable.  Lewis
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  No findings of fact or conclusions of law
were made or requested. Therefore, the trial court=s
judgment must be upheld if any appropriate ground exists to support it.  State v. Reed, 965 S.W.2d 74, 77-78
(Tex. App.CAustin
1998, no pet.).

                        Did The Trial Court
Abuse Its Discretion by Ordering A New Trial?

The trial court granted appellee a new trial both
on the basis of newly discovered evidence 
and in the interest of justice. 
Either ground is sufficient to support a new trial. Tex. Code Crim. Proc. Ann. art. 40.001 (Vernon Supp. 2005)(newly
discovered evidence); Gonzalez, 855 S.W.2d at 694 (in the interest of
justice).  We will first address the
trial court=s
decision to grant a new trial in the interest of justice.

Texas caselaw has neither developed a fixed set of
criteria nor hard and fast rules to consider when reviewing a new trial granted
in the interest of justice.  Texas trial
courts have had the discretion to do so for at least 130 years.  See Mullins v. State, 37 Tex. 337,
339-40 (1872).  The Texas Court of
Criminal Appeals has recognized that the discretion to order a new trial when a
trial court concludes that a trial has resulted in a miscarriage of justice is
an important part of our judicial system. 
Gonzalez, 855 S.W.2d at 694; see also State v. Trevino,
930 S.W.2d 713, 716 (Tex. App.CCorpus
Christi 1996, pet. ref=d)(when
a trial judge determines that justice has not been done, that judge has not
only the power but also the obligation to order a new trial).








The State assumes that the trial court granted a
new trial based upon appellee=s
contention that Juan perjured himself. 
The State contends that Juan never made a material false statement because
he never directly denied being Omar=s
father.  The State concedes that Juan=s testimony was not wholly forthcoming
but argues that it does not amount to perjured testimony under Texas law.[1]  The State argues alternatively that the
testimony would not mitigate to appellee=s
innocence because it does not disprove an element of the offense for which she
was convicted.

While Texas courts have not established a set of
criteria which must be met before a new trial may be granted in the interest of
justice, they have consistently held that reversible error need not be shown
and that a motion need not be based upon a claim of actual innocence.  For example, in Gonzalez, 855 S.W.2d
at 693, the Texas Court of Criminal Appeals affirmed a new trial granted to a
defendant who pled guilty but who was unable to call an uncle to testify at his
sentencing hearing.  The court=s opinion is silent as to any reference
to Gonzalez=s
exercise of diligence to obtain his uncle=s
testimony, nor does it indicate that he asked the trial court to continue the
sentencing hearing so that his uncle could be present.  If the trial court had not granted a new
trial, it appears there would have been no reversible error.

The Gonzalez opinion cited with approval
two Texas Supreme Court decisions affirming new trials granted in the interest
of justice without any finding that reversible error had occurred.  Champion Int=l
Corp. v. Twelfth Court of Appeals, 762 S.W.2d 898, 899 (Tex. 1988); and Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985).  At least three intermediate courts have
concluded that a new trial in the interest of justice may be granted without
reversible error.  See State v.
Belcher, Nos. 14-04-00968-CR & 14-04-00969-CR, 2005 WL 2787320 (Tex.
App.CHouston
[14th Dist.] Oct. 27, 2005, no pet. h.); State v. Kelley, 20 S.W.3d 147,
155 (Tex. App.CTexarkana
2000, no pet.); and Trevino, 930 S.W.2d at 716. 








Because appellee was not required to establish
reversible error, the trial court was not required to find that Juan committed
aggravated perjury.  Of course, the trial
court could have reasonably concluded that Juan=s
statements that appellee was already pregnant when she came to live with them,
that he did not know who Omar=s
father was, and that he never mistreated appellee were all untrue.  Furthermore, because a new trial may be
granted for events arising solely during the punishment phase of trial,
appellee was not required to show that the test results disproved any element
of the offense for which she was charged C
although the results could have impacted a juror=s
assessment of appellee=s
culpability. 

The trial judge was best positioned to determine
the DNA test results=
potential impact.  The jury was aware
that CPS had alleged Juan was the father and that he had been ordered to take a
blood test.  The State offered affidavits
of five jurors who stated that they had discussed the possibility of Juan being
Omar=s father
and that the DNA test results would not have affected their decision.  The trial court was free to consider those
affidavits and, in fact, affirmatively indicated to counsel that it was.  The affidavits, however, are not
conclusive.  Because there are
differences between one party telling jurors the results of a paternity test in
the context of asking for an affidavit and developing that same information in
the context of an adversarial proceeding, the trial court could reasonably
determine that the test results would have made a difference in either the
guilt/innocence phase or the sentencing phase of the trial.  In fact, one of the jurors stated in his
affidavit that this information would not have made a difference in appellee=s sentence Aunless
it was proven that Juan had forced [appellee] to have the sexual relationship
with him.@  As this affidavit suggests, the potential
impact of the paternity test extends beyond simply advising the jury that Juan
was Omar=s father.
The trial court correctly noted that there is a difference between evidence
that Juan was potentially Omar=s
father and evidence that he actually was.

If defense counsel had in hand conclusive evidence
establishing paternity, it would have allowed him to take a very different tack
in his cross-examination of Juan and Aurelia and conceivably could affect the
decision to call appellee as a witness. 
It would have also allowed counsel the opportunity to develop testimony
that the incest committed against appellee when she was under seventeen years
of age impacted her mental state and, thus, her culpability.  The trial court=s
charge included insanity as a defense. 
Dr. Hurd was the only medical expert to offer expert testimony on
appellee=s
sanity.  She was unaware of the paternity
allegation at the time of her examination of appellee.  In light of her testimony that incest could
affect appellee=s mental
state in different ways and that victims sometimes repress these memories, the
trial court could reasonably conclude that in the interest of justice further
psychiatric examination was appropriate.








The trial court could have also reasonably
determined that the test results would have potentially impacted the sentencing
portion of the trial and that, had this evidence been developed further, a jury
might have returned a different sentence. 
We cannot, therefore, say that the trial court abused its discretion
when it ordered a new trial in the interest of justice.  The State=s
second issue is overruled.  In light of
this determination, it is unnecessary for us to determine whether the DNA test
results were sufficient to support a new trial based upon newly discovered
evidence; and, thus, we do not reach the State=s
first issue.

             Did
The Trial Court Err By Not Allowing The State To Call Defense Counsel As A 

                            Witness
At The Hearing On Appellee’s Motion For New Trial?

The trial court held an evidentiary hearing on
appellee=s motion
for new trial.  The State attempted to
call appellee=s counsel
as a witness for the limited purpose of establishing receipt of a CASA
report.  The report is dated August 19,
2004 B
approximately three months before appellee=s
trial.  The report=s
cover sheet shows appellee=s
counsel was provided a copy.  In this
report, CASA expressed its concern that Juan might be Omar=s father and requested paternity
testing. 

The Texas Court of Criminal Appeals has held that
a defense counsel may not be called as a witness by the prosecution absent a
compelling and legitimate need.  Flores
v. State, 155 S.W.3d 144, 148 (Tex. Crim. App. 2004).  This requires proof that (1) there is no
feasible alternative for obtaining and presenting the information to the jury
except through defense counsel=s
testimony and (2) the testimony is essential, not merely relevant, to the State=s case. 
Flores involved an attorney being forced to testify before the
jury during his client=s
trial.  That situation involves
additional concerns not present here, but the State concedes this test is still
applicable, and we agree.

The State argues it needed to establish when
appellee=s counsel
received the CASA report because this is crucial when determining whether the
DNA test results constituted newly discovered evidence.  As noted previously, we do not reach the question
of whether the trial court abused its discretion by ordering a new trial based
upon newly discovered evidence because we find the trial court properly granted
a new trial in the interest of justice.  








Furthermore, even if the State=s point is relevant to whether a new
trial in the interest of justice was appropriate, the State has shown no harm
because it was undisputed that appellee=s
counsel had the report prior to trial. 
During the hearing on appellee=s
motion for new trial, the trial court noted that its file reflected that
appellee=s counsel
was sent a copy of the report and then stated that, as Afar
as I=m
concerned, if I hear no evidence to the contrary, that=s
what is going to be what the evidence shows, that [counsel] received a copy of
it.@ 
The trial court also noted that appellee=s
counsel had asked questions during the trial about the State=s allegation that Juan was the father
and concluded that counsel was well aware of the paternity claim and the court=s file in the related CPS case.  Appellee=s
counsel offered no evidence in response to the trial court=s comments nor otherwise disputed
having received and reviewed the report prior to trial.  

We find that the State failed to establish a
compelling and legitimate need for counsel=s
testimony and, therefore, that the trial court did not abuse its discretion
when it refused to allow the State to call appellee=s
counsel as a witness.  Issue three is
overruled.   

                                                         Conclusion

The trial court did not abuse its discretion when
it ordered a new trial. The judgment is, therefore, affirmed.

 

 

RICK STRANGE

JUSTICE

 

March 9, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]The
elements of aggravated perjury are that a party (1) with intent to deceive and
(2) with knowledge of the statement=s meaning
(3) made a false statement under oath (4) that was required or authorized by
law to be made under oath (5) in connection with an official proceeding and (6)
that the false statement was material.  Tex. Pen. Code Ann. '' 37.02-.03 (Vernon 2003).