Affirmed and Opinion filed October 1, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00556-CR

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

BOBBY LEE MORENO, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 54,772

 



 

O P I N I O N

Appellee Bobby Lee Moreno was convicted of
two counts of aggravated sexual assault and sentenced to five years= community service
for each count.  Appellee filed a motion for new trial, which the trial court
granted.  In one issue, the State contends the trial court abused its
discretion in granting a new trial.  We affirm.

I.  Factual and Procedural Background








The complainant and appellee are half
brother and sister.  Both share the same father, Alfredo Moreno.  Appellee
lives with his father, his grandparents, two aunts, his father=s girlfriend, and
two older brothers in a small two bedroom house.  When the complainant=s mother and
father were divorced, the complainant visited her father on alternating
weekends, alternating spring breaks from school, and one month during the
summer.  When the complainant visited her father, she would sleep on a living
room couch while her father and his girlfriend slept on an air mattress placed
on the floor abutting the couch.

On March 31, 2007, the complainant told
her mother, Stacie Estes, that she had vaginal blisters.  The complainant was
twelve years old at the time.  Estes questioned the complainant about whether
she had ever had sexual intercourse, which the complainant denied.  Estes told
the complainant that if she had contracted a sexually transmitted disease, she
could die if the disease went untreated.  The complainant retreated to her
bedroom, and a few minutes later, she returned and told Estes that appellee had
sexually assaulted her and forced her to have intercourse the last time she
visited her father=s house.  Estes testified that the
complainant was last at her father=s house on March
17, 2007.

After reporting the assault to her mother,
an emergency room physician examined the complainant and found no physical
evidence of abuse.  The physician testified, however, that the lack of physical
evidence was not indicative of the truth or falsity of the complainant=s accusation.  The
vaginal blisters were a result of an infection and were not caused by sexual
activity.  The admitting nurse at the hospital noted that the complainant
reported the assault had occurred two months prior to the outcry to her
mother.  








The complainant was subsequently
interviewed by a caseworker at the Child Advocacy Center (ACAC@).  She told the
caseworker that appellee had assaulted her twice, once when she was eleven
years old and the last time when she was twelve years old.  She said the
assault occurred the last time she was at her father=s house, which was
six months prior to the outcry to her mother.  She first told the interviewer
that appellee woke her while she was lying on the living room couch and her
father and his girlfriend were lying on the air mattress next to the couch. 
After he woke her, appellee began to kiss her and put his private part in her
private part.  She said appellee only stopped because she pushed and kicked
him.  During the same interview, the complainant said appellee stopped because
he saw the lights of a blue van drive up.  When the interviewer asked who was
driving the van, the complainant said it was her father.  The interviewer then
asked whether the complainant=s father was sleeping on the air mattress
or driving the van.  The complainant said her father had been sleeping on the
air mattress, but had left early in the morning to drive her aunt to work.  The
complainant also reported another assault in which she alleged appellee forced
her to perform oral sex on him, and another instance when appellee kissed her
when she was in the first grade.

At trial, the complainant testified that
appellee assaulted her in the living room of her father=s house two weeks
before she made outcry to her mother.  She testified that no one in the house
witnessed the assault because appellee would stop and pretend to look out of
the window when someone in the house awakened.  She further testified that
appellee kissed her in a back yard shed when no one else was there.  During
that incident, she said her father came home from the store, which caused
appellee to stop.  The complainant testified that at other times appellee would
force her to perform oral sex on him and that appellee kissed her while she was
at her mother=s house.  The complainant testified that appellee
began kissing her when she was in kindergarten, kissed her chest in first
grade, kissed her private part in second grade, and put his private part in her
private part in third grade.  She said that when she was in fourth and fifth
grade, he put his private part in her bottom, and in sixth grade, Ahe would start
putting it all together; and he would start kissing me more on my private part.@  She also
testified that she went with her father and appellee to her father=s medical
appointment, and appellee assaulted her in the van either going to or from the
medical appointment.

The complainant=s brother was the
only witness who observed the abuse.  He testified that he saw appellee put his
hand in the complainant=s pants while they were on the living room
couch and that he saw appellee touch the complainant=s private parts
while they were in a shed in the back yard of their father=s home. 








In his defense, appellee presented the
testimony of his two older brothers, his father, and two neighbors.  Appellee=s brothers,
Michael and Freddie Moreno, testified that they were living with appellee at
their father=s house at the time the complainant alleged the sexual
assault occurred.  Both brothers testified that the complainant did not visit
their home at all during 2006 or 2007.  They further testified that when she
and her brother visited, they were never left alone and the complainant always
slept in the living room and the complainant=s brother always
slept in appellee=s room.  Michael testified that when he
was fifteen or sixteen years old, Estes and her sister took him to an adult
nightclub.  He further testified that he had seen Estes show the complainant
pornography on the internet.  Michael testified that the complainant=s brother never
went to the shed at their father=s house and that
it was so full of tools, boxes, and gardening implements that appellee and the
complainant could not have been in the shed at the time the complainant alleges
she was assaulted there.

Alfredo Moreno, the complainant=s and appellee=s father,
testified that neither the complainant nor her brother visited his house after
March 2005.  He remembered the time because he was sick and could not take care
of the children during spring break that year.  He testified that because he
could not take the children at spring break, Estes became angry with him and
denied him visitation after that time.  He witnessed Estes showing pornographic
pictures to the complainant.  Each of the brothers and Alfredo testified that
appellee never went to Estes=s home.  They also testified that the
complainant never accompanied appellee and Alfredo to a medical appointment.

On rebuttal, the State called Estes, who
testified that the complainant had not been to her father=s house on October
31, 2006, six months prior to her outcry.  She denied showing pornographic
material to her children.  Estes testified that she did not deny Alfredo Moreno
visitation with the complainant or her brother and that the last time the
complainant visited her father was on March 17, 2007.








The jury found appellee guilty on two
counts of aggravated sexual assault.  During the punishment hearing, the State
called the complainant who testified how her life had changed since the
incidents of sexual assault.  At the conclusion of the complainant=s testimony, the
State introduced a packet of documents, which contained the complainant=s counseling
records from the Devereux Texas Treatment Network. 

The counseling records revealed the
following: The complainant was admitted to Devereux Treatment Center on June
27, 2007, with the notation that she was a A12-year-old female
who in March of [2007] came forward with a long history of sexual abuse, stated
that she had been abused by her now 23-year-old half brother from the age of 4
until March.@  She showed increased depression, mood swings,
problems at school and Asuicidal ideation with a plan.@  A psychiatric
assessment on the day of admission reported the following history:

[Complainant] is a 12-year-old
white female brought in by her mother due to reports of her revealing that she
felt that she Amessed up her life@ and Adidn=t want to deal with it anymore.@  She began crying and screaming at home.  She reportedly
was upset about recent sexual abuse and not remembering what really happened
versus what she thought may have happened.  [Complainant] is very tearful
during the interview and per staff, she has been crying frequently during the
day.  She rapidly recounts feelings that her mother had put a pillow over her
face to keep her from crying even though she is not sure this actually
happened.  She also is scared that she may endanger her current living
environment after telling people about this incident and another incident about
her stepfather hitting her.  She is unsure but ruminates about feelings that
she has done something sexually inappropriate with her 5-year-old sibling Abut I really didn=t.@  [Complainant] usually reports feeling happy but
has been tearful and crying for the last four days.  She admits to suicidal
ideation stating AI would jab a pencil in my arm.@  She admits to sometimes getting
mad and as a result begins Ayelling and screaming.@  She admits to engaging in sexual play with a cousin from age 8 to
recently.  CPS reportedly has been involved in the past.

 








When the complainant=s mother and
stepfather were interviewed about the alleged physical abuse, they said that
since reporting the sexual assault by appellee the complainant could not Adistinguish
between what is imagined and what is reality.@  The complainant
thought she had been abused by people other than her half brother.  She also admitted
that she thought she had inappropriately touched others including her
five-year-old brother and a cousin.  The reports state that AEach of these
persons are shocked and report no such events.@  The therapist
reported that the complainant=s grasp of reality and her imagination are
Avery much confused
in her mind.@  Another entry read, APatient=s larger issue is
with talking about doing bad things she has not even done.  Therapist now feels
this may be partly due to confusion with reality.  More due to the attention
patient gets from all the talk.@  The therapist also recognized that the
complainant had Afalse fantasies.@  The complainant
was focused on issues and staying away from someone named Levi who was an
admitted pedophile.  The complainant was Acompletely
absorbed with sex and everything somehow relates to the topic.@  The complainant
spoke Aof sex with her
grandmother=s dog.@  

A discharge summary dated July 13, 2007
stated that the complainant was afraid she may endanger her current living
environment if she revealed her sexual abuse.  She was unsure about her memory,
but Aruminates about
feelings that she has done something sexually inappropriate with her 5-year-old
sibling, but reports >I really didn=t.=@  The complainant
was admitted as an inpatient, but was transitioned to a partial hospitalization
program on July 3, 2007.  The discharge summary stated that her only setback
was the day she was told she would have to speak with Child Protective Services
about the alleged inappropriate touching of her younger sibling. 

In an outpatient progress note, the
therapist noted that the complainant lacked sexual boundaries.  The complainant
learned in the session that Ait is improper to go up and tell some boy
that you like to look at his private area.@  She also learned
that she may not talk about sex continually in most settings.  The therapist=s notes further
recorded that the complainant reported that she had inappropriately touched
others, but when those persons were contacted, they expressed shock and
reported no such events had occurred.








During the punishment phase, appellee=s attorney
questioned Estes about the psychiatric records.  Estes testified that she did
not place a pillow over the complainant=s face to keep her
from crying, but that the complainant reported to the counselor that she had. 
The counseling records showed that the complainant had sexual feelings toward a
cousin and that she had been engaging in sexual play with her cousin from the
time the complainant was eight years old.  Estes admitted that the complainant
had engaged in sexual play with her eight-year-old cousin, but had not done so
with other people.  The complainant=s cousin admitted
that the two girls had kissed.  Estes said the complainant did not begin to
obsess about sex until after she reported appellee=s abuse.  Estes
denied that the complainant had sex with her grandmother=s dog.  Appellee=s attorney asked
Estes whether the story about the dog was Asome sort of
bizarre fantasy.@  Estes responded, AYeah, a little 12
year old girl having some weired [sic] fantasy.@  When appellee=s attorney asked
whether one of those Aweird fantasies@ could have
included the complainant=s half brother, Estes answered, AYes.@  

After deliberating for just over thirty minutes, the
jury assessed punishment at five years= community
supervision.  Appellee filed a motion for new trial in which he alleged he was
entitled to a new trial because the verdict was contrary to the law and the evidence
and in the interest of justice.  The basis of appellee=s motion was that
a new trial was required in the interest of justice because if the counseling
records had been admitted during the guilt-innocence phase of trial, the
evidence would have been legally and factually insufficient to support a
conviction.  








The trial court held a hearing on appellee=s motion, at which
appellee=s attorney stated
that twelve to fourteen days prior to trial, the State faxed a one-page
document to his office notifying him of the Devereux records.  The records were
not attached, but the notice stated that the records would be admissible under
rule 803(6) or 803(7) of the Texas Rules of Evidence and would be made
available by the clerk of the court for inspection and copying.  At the
conclusion of the hearing, the trial court commented that the effect on the
jury of the Devereux records was profound.  In granting the motion, the court
stated, AThe jury
obviously, as I told you back there, were telling us that if they had known at
the [guilt-innocence] phase what they know now, they would have found him not
guilty.@  At a subsequent
hearing on the State=s motion for findings of fact and
conclusions of law, the trial court found that the motion for new trial was
granted because the evidence was legally and factually insufficient to support
a conviction.  The court further found that a new trial should be granted in
the interest of justice.

II.  Analysis

The State appeals the grant of a new trial in a single
issue alleging the trial court abused its discretion when it granted appellee=s motion. 
Appellee sought a new trial for the following reasons: (1) the verdict is
contrary to the law and the evidence and (2) the interest of justice requires a
new trial.  In its judgment, the court stated, AOn June 9, 2008
came to be heard defendant[=]s first amended motion for new trial and
the said motion is hereby granted.@ 

A.      State=s Allegation of
Waiver

Initially, the State contends that appellee failed to
properly raise his motion for new trial because the motion was not supported by
an affidavit.  Texas Rule of Appellate Procedure 21 requires that a motion for
new trial be: (1) timely filed, (2) properly presented, and (3) adequately
verified.  The right to a hearing on a motion for new trial is not absolute. Reyes
v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).  As a prerequisite to
obtaining a hearing, a motion for new trial must be supported by affidavit,
either of the accused or someone else, specifically showing the truth of the
grounds of attack.  Martinez v. State, 74 S.W.3d 19, 21 (Tex. Crim. App.
2002).  A defendant will be entitled to an evidentiary hearing if his Amotion and
accompanying affidavit(s) raise matters not determinable from the record, upon
which the accused could be entitled to relief.@  Lucero v.
State, 246 S.W.3d 86, 94 (Tex. Crim. App. 2008). 

Once the trial court holds a hearing on a motion for
new trial in which all facts alleged in the motion can be placed on the record
and the credibility of the allegations in the motion can be assessed by the
trial court, the need for supporting affidavits is moot.  Cf. Mayo v.
State, 17 S.W.3d 291, 296B97 (Tex. App.CFort Worth 2000,
pet. ref=d) (counsel=s failure to file
timely motion for new trial became moot when trial court granted hearing on the
motion).  Therefore, appellee=s failure to file an affidavit became moot
when the trial court held a hearing on the motion for new trial.








B.      Standard of Review

The granting of a new trial rests within the sound
discretion of the trial court.  Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim.
App. 1995).  An appellate court will reverse the trial court=s decision only
when that decision is so clearly wrong as to lie outside the zone in which
reasonable persons might disagree.  State v. Provost, 205 S.W.3d 561,
566B67 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  An appellate court is not to substitute its judgment
for that of the trial court; rather the appellate court=s role is to
examine the record to determine whether the trial court granted a new trial
without reference to any guiding rules or principles or, in other words,
whether the trial court=s decision was arbitrary or unreasonable. 
See Lewis, 911 S.W.2d at 7.  The appellate court is to presume the trial
court correctly granted a new trial, and the State has the burden to establish
the contrary.  State v. Belcher, 183 S.W.3d 443, 447 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  We will uphold the trial court=s judgment if any
appropriate ground exists to support it.  Id.

C.      Did the trial court abuse its discretion in granting a new
trial on the ground that the verdict is contrary to the law and the evidence?

 

The granting of a new trial on the basis of factual insufficiency is the
equivalent of a trial court granting a motion for new trial because the verdict
is against the law and evidence.  See Youens v. State, 988 S.W.2d 404,
407 n.2 (Tex. App.CHouston [1st Dist.] 1999, no pet.).  Despite the fact
that the trial court found the evidence legally and factually insufficient, it
does not appear from the court=s order that the judge ordered an
acquittal, but granted a new trial.  Because the trial court granted a new
trial, we presume the court=s decision was based on the interest of
justice and factual insufficiency.  However, because the court found the
evidence was legally insufficient during the hearing on findings of fact and
conclusions of law, we will review the trial court=s decision under a
legal sufficiency standard.  








When deciding a motion for new trial challenging the
legal sufficiency of the evidence, the trial court applies the appellate legal
sufficiency standard of review.  Provost, 205 S.W.3d at 567; State v.
Savage, 905 S.W.2d 272, 274 (Tex. App.CSan Antonio 1995),
aff=d, 933 S.W.2d 497 (Tex. Crim. App. 1996). 
Thus, the trial court, viewing the evidence in the light most favorable to the
verdict, must determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Provost,
205 S.W.3d at 567.  If the evidence meets this standard, the trial court has
abused its discretion in granting the motion for new trial.  Id.  When
reviewing the evidence, the trial court may not sit as the thirteenth juror and
may not substitute its beliefs for those of the jury.  State v. Hart,
905 S.W.2d 690, 693 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d). 

In evaluating the factual sufficiency of the evidence,
we view all the evidence in a neutral light and will set aside the verdict only
if we are able to say, with some objective basis in the record, that the
conviction is clearly wrong or manifestly unjust because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Deference is to be
given to the fact finder=s determinations involving credibility and
demeanor of witnesses.  Id.  When considering factual insufficiency as a
possible ground for the granting of a new trial, we must determine whether a
finding of factual insufficiency by the trial court would have been an abuse of
discretion.  State v. Boyle, No. 2-03-384-CR; 2004 WL 1598283, at *6
(Tex. App.CFort Worth July 15, 2004, no pet.) (not designated for
publication); cf. State v. Gill, 967 S.W.2d 540, 542 (Tex. App.CAustin 1998, pet.
ref=d) (holding that
when trial court grants motion for new trial on basis of ineffective assistance
of counsel, appellate court should review standards of Strickland v. Washington,
466 U.S. 668 (1984), through prism of abuse of discretion standard and decide
whether trial court=s decision to grant new trial was so
outside zone of reasonable disagreement that it is subject to reversal). 








At the guilt-innocence phase of trial, the State
called four witnesses during its case-in-chief.  The complainant and her
brother both testified that appellee assaulted the complainant in the living
room of their father=s home where the complainant was sleeping
and in the shed in the back yard of their father=s home.  The
complainant=s testimony about the timing of the assaults was
conflicting.  When she first made outcry to her mother, the complainant said
the assault happened the last time she was at her father=s house.  Estes
testified that the complainant was at her father=s house two weeks
prior to the date the complainant told her of the assault.  The hospital
records reflect that the complainant was last at her father=s house two months
prior to the outcry.  Finally, the complainant told the CAC worker that she had
last been at her father=s house six months prior to her outcry. 
Therefore, the evidence showed that the alleged assault took place some time
between October 31, 2006 and March 17, 2007.  A physician testified that the
complainant=s physical symptoms were not due to sexual assault but
an infection resulting possibly from hygiene issues.  The physician also
testified that the lack of physical evidence was not indicative of the truth or
falsity of the complainant=s accusation.  The State=s fourth witness
was the police officer who took the statement of the complainant and her
mother.  He testified when he first encountered the complainant and her mother,
both appeared upset and the complainant was crying.  

Appellee presented the testimony of his two older
brothers, his father, and two neighbors.  The neighbors testified to appellee=s law-abiding
reputation.  Both brothers and appellee=s father testified
that the complainant did not visit their home in 2006 or 2007.  They testified
that eight people lived in the two-bedroom home and that the complainant and
appellee were never alone.  The father and his girlfriend slept on an air
mattress within inches of the couch on which the complainant alleged the
assault took place.  Michael Moreno testified that Estes had shown him and the
complainant pornography while at her house.  Appellee=s brothers and
father testified that the shed in the father=s back yard was so
full of tools, boxes, and gardening implements that no one could go in the shed
where the complainant alleged one of the instances of abuse occurred.  They
further refuted the complainant=s testimony that appellee had kissed her
at her mother=s house or in the van on the way to her father=s medical
appointment.








Appellee argues that the evidence is legally and
factually insufficient in light of the Adramatic
revelations that occurred during the sentencing phase@ of his trial. 
However, in a bifurcated trial before a jury on a plea of not guilty, our
consideration of the evidence is necessarily limited to that evidence before
the jury at the time it rendered its verdict of guilt. Barfield v. State,
63 S.W.3d 446, 450 (Tex. Crim. App. 2001).  Therefore, in reviewing whether the
trial court abused its discretion in granting a new trial based on legal and
factual insufficiency of the evidence, we may only consider the evidence the
jury had before it at the time it reached its guilty verdict.

Applying the appropriate standards of review, we
conclude that when the evidence is viewed in the light most favorable to the
verdict, there is legally sufficient evidence from which a rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Further, when viewed in a neutral light, we find no objective basis in
the record for the trial court to determine that the jury=s verdict was
clearly wrong or manifestly unjust because it was contradicted by the great
weight and preponderance of the evidence.  While the evidence at
guilt-innocence was conflicting, the jury acted within its role as fact-finder
to resolve conflicts in the evidence.  See Jensen v. State, 66 S.W.3d
528, 534 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (testimony of a
victim, standing alone, even when the victim is a child, is sufficient to
support a conviction for sexual assault).  In reviewing appellee=s motion, the
trial court had to presume that the jury resolved those conflicts in favor of
the verdict.  See Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App.
1993) (when faced with conflicting evidence, reviewing court presumes the trier
of fact resolved conflicts in favor of the prevailing party).  Therefore, the
trial court abused its discretion in granting the motion for new trial on the
grounds of legally and factually insufficient evidence.

D.      Did the trial court abuse
its discretion in granting a new trial in the interest of justice?

 

 








AFor more than one hundred and twenty years,
our trial judges have had the discretion to grant new trials in the interest of
justice.@  State v.
Herndon, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007).  The ruling of the
trial court is presumed correct, and the burden in this case rests on the State
to prove otherwise.  Belcher, 183 S.W.3d at 447.  Having heard the
evidence and being present to observe the dynamics of the trial, the trial
court is in a better position than an appellate court to evaluate the impact on
a jury when evidence bearing on the complaining witness=s credibility is
injected into the record during the punishment phase of trial.

As a general rule, a trial court will not abuse its
discretion in granting a motion for new trial in the interest of justice if the
defendant (1) articulated a valid legal claim in his motion, (2) produced
evidence or pointed to evidence in the trial record that substantiated his
legal claim, and (3) showed prejudice to his substantial rights under the rules
of appellate procedure.  Herndon, 215 S.W.3d at 909; see Tex. R. App. P. 44.2.  The defendant
need not establish reversible error as a matter of law before the trial court
may exercise its discretion in granting a motion for new trial.  Herndon,
215 S.W.3d at 909.  A trial court does not have the discretion, however, to
grant a new trial unless the defendant demonstrates that his first trial was
seriously flawed and that the flaws adversely affected his substantial rights
to a fair trial.  Id.

1.       Valid Legal Claim

In his motion for new trial, appellee pointed to his
assertion of innocence and his inability to cross-examine the complainant with
the Devereux records because they were not admitted until the punishment phase
of trial.  The State argues that the Devereux records, while admissible during
punishment, would not have been admissible at the guilt-innocence phase. 








The State first argues that the records would have
been inadmissible under rule 608(b) of the Texas Rules of Evidence.  Rule 608(b)
prohibits proof through extrinsic evidence on specific instances of the conduct
of a witness, for the purpose of attacking or supporting the witness=s credibility,
other than conviction of a crime as provided in Rule 609.  Tex. R. Evid. 608(b).  However, the
credibility of the witness, and the weight to be given his or her testimony, is
a matter for the jury to decide. See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979).  The mental capacity of
a witness is the proper subject of consideration and impeachment as bearing
upon her credibility.  Perry v. State, 236 S.W.3d 859, 865 (Tex. App.CTexarkana 2007, no
pet.).  Therefore, rule 608(b) permits the impeachment of a witness with
evidence that might go to any impairment or disability affecting the witness=s credibility.  Id.


The State cites several cases in which the court found
that evidence of a victim=s mental health or previous false
accusations was not admissible.  See Lopez v. State, 18 S.W.3d 220 (Tex.
Crim. App. 2000); Lagrone v. State, 942 S.W.2d 602 (Tex. Crim. App.
1997); Scott v. State, 162 S.W.3d 397 (Tex. App.CBeaumont 2005,
pet. ref=d).  Those cases
are distinguishable from the current case in that the medical records sought to
be introduced here bear directly on the complainant=s credibility.  

In Lopez, the court held that a prior false
accusation of physical abuse was not admissible to impeach the complainant in a
subsequent allegation of sexual assault.  18 S.W.3d at 225.  The court declined
to create a special exception to rule 608(b) for sexual assault cases but held
that an allegation of physical abuse was too far removed from the allegation of
sexual abuse to be relevant.  Id. at 226.  In Lagrone, the court
held that evidence of prior drug use was inadmissible as impeachment evidence. 
942 S.W.2d at 613.  The court found that the party seeking to introduce the
evidence must demonstrate an actual drug-based mental impairment during the
witness=s observation of
the crime in order to pursue impeachment of a witness=s perceptual
capacity with evidence of drug addiction.  Id.  In Scott, the
court of appeals held that evidence of a witness=s recent mental
illness was not admissible to impeach his credibility.  162 S.W.3d at 401B02.  The court
explained that the mere fact that a witness has in the recent past suffered or
received treatment for a mental illness or disturbance does not, for this
reason alone, cause this kind of evidence to become admissible impeachment
evidence. Id. at 401.  AIf the witness is shown to have been
suffering from a recent mental illness, prior to the occurrence of the event in
question, and such might be considered a >persistent
disabling disturbance of his mental and/or emotional equilibrium, manifested
through persistent maladjustment and more or less irrational, even bizarre
behavior and speech,= [citation omitted]
whether psychic or organic in origin, then, of course, the trial judge should
permit the jury to hear this kind of evidence.@  Id. (quoting
Virts v. State, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987)).








The evidence in the Devereux records not only
addressed the complainant=s mental state but directly addressed her
inability to separate fantasy from reality.  The therapist=s notes raised the
possibility that the complainant had not been abused by her half brother but
had created the event in her mind or confused an actual event with fantasy. 
The State argues that the complainant=s inability to
separate fantasy from reality did not occur until after the alleged offenses
took place.  The records, however, are not clear as to the timing or cause of
the complainant=s psychological issues.  While it is true
that the complainant was not hospitalized until she made outcry, that is not
evidence that her psychological problems did not occur until she was
hospitalized.  Therefore, the evidence would have been admissible under rule
608(b) to impeach the complainant=s credibility.  

The State further contends that the Devereux records
were inadmissible under rules 403 and 404 of the Rules of Evidence.  Rule 404
prohibits the use of character evidence to prove conduct and rule 403 prohibits
the use of otherwise relevant evidence if the opponent of the evidence shows
that its probative value is outweighed by its prejudicial effect.  In support
of its assertion that the Devereux records are irrelevant, the State cites Garcia
v. State, 228 S.W.3d 703 (Tex. App.CHouston [14th
Dist.], 2005, pet. ref=d).  In that case, the defendant attempted
to impeach the complainant by introducing evidence that she made false
allegations against her father.  Id. at 705B06.  The defendant
sought to introduce the testimony of the complainant=s father that the
complainant=s previous allegations were false.  Id.  This
court found the evidence was inadmissible, not because it was irrelevant, but
because it was inherently self-serving and unreliable.  Id. at 706.  

In this case, there is no allegation that the evidence
is self-serving or unreliable.  The evidence is relevant to the complaining
witness=s credibility. 
Further, the State fails to show how the probative value of the evidence is
outweighed by the danger of unfair prejudice.  The Devereux records would have
been admissible at the guilt-innocence phase of trial had they been offered.








2.       Evidence
in the Record Substantiated the Claim

During the punishment phase of trial, the Devereux
records admitted included the therapist=s notation that
the complainant was obsessed with sex and discussed several instances in which
she thought she had inappropriately touched a cousin, her brother, and her
grandmother=s dog.  The notes also recorded that the complainant
had Afalse fantasies@ and confused
reality with imagination.  Estes testified that the complainant=s story about her
grandmother=s dog was a Aweird fantasy.@  She further
admitted that one of the complainant=s Aweird fantasies@ could have included
the story of the sexual assault by her half brother.

The circumstances and timing of the alleged sexual
assault were hotly contested.  According to the testimony at trial, the first
event occurred in a two-bedroom house with eight people, only one of whom saw
the abuse.  The second event occurred in a shed where the same person, the
complainant=s brother, witnessed the abuse.  Appellee=s family testified
that the complainant had not even been in their house for two years.  Even the
complainant=s mother admitted that the complainant=s claim could have
been a fantasy.  Because the evidence at trial conflicted sharply, the issue of
the complainant=s credibility was of heightened
importance, and the Devereux records were admissible to impeach the complainant=s credibility. 

3.       Harm or Prejudice

The trial court had the discretion to grant a new
trial if it was persuaded that (1) appellee=s first trial was
seriously flawed and (2) the flaws adversely affected his substantial rights to
a fair trial.  Herndon, 215 S.W.3d at 909.  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997).  








The State contends that appellee=s trial was not
seriously flawed because the records were more beneficial to the State than to
the defense.  In making this argument, the State contends that the records show
the complainant=s psychological problems were caused by
appellee=s actions.  The
State further contends that Aa fair reading of the document shows only
temporary psychological problems occurring after the abuse, but well before
trial.@  In the records,
the complainant reports abuse allegedly occurring when she was four years old. 
She also reported abuse by individuals other than appellee.  The issue of
whether the complainant=s inability to distinguish reality from
imagination occurred prior to the alleged abuse or as a result of it is not
conclusively demonstrated by the records alone.  Because the records were not
introduced until the punishment phase, there was no opportunity for the jury to
evaluate when the complainant=s issues arose.  The records raise the
issue of the complainant=s credibility, which the jury was entitled
to hear at guilt-innocence.

Appellee=s trial was
seriously flawed and his substantial rights were affected because evidence that
directly questioned the credibility of the complaining witness was not admitted
during guilt-innocence.  Accordingly, we cannot say that the trial court=s decision to
grant a new trial was so clearly wrong as to lie outside the zone in which
reasonable persons might disagree.  

III.  Conclusion

The record is unclear as to whether the trial court
granted an acquittal or a new trial. The trial court judge, in granting
appellee=s motion, stated
that he granted the motion because the evidence was legally and factually
insufficient, and in the interest of justice.  If a trial court grants a motion
for new trial on the basis of legal insufficiency of the evidence, double
jeopardy prevents the trial court from entering any other judgment than an
acquittal.  State v. Savage, 933 S.W.2d 497, 499 (Tex. Crim. App.
1996).  We have determined that the trial court abused its discretion in
granting the motion for new trial on the basis of legal and factual
insufficiency, but that it did not abuse its discretion in granting a new trial
in the interest of justice.  Therefore, to the extent the record can be read to
grant an acquittal on the ground of legal insufficiency of the evidence, the
State=s issue is
sustained.  With regard to the grant of a new trial in the interest of justice,
the State=s sole issue is overruled.

 








Accordingly, to the extent the trial court granted a
new trial in the interest of justice, the court=s order granting a
new trial is affirmed.

 

 

/s/      Leslie
B. Yates

Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates and Frost.

Publish C Tex.
R. App. P. 47.2(b).