Johnnie Howard TAYLOR, Appellant,

v.

STATE of Texas, Appellee.

No. 11–07–00131–CR.

Court of Appeals of Texas, Eastland.

Dec. 4, 2008.

Discretionary Review Refused June 3, 2009.

Brack Jones Jr., Beaumont, for appellant.

Johnnie Taylor, Gatesville, pro se.

Thomas Maness, Dist. Atty., Deborah Ann Manes, Rodney D. Conerly, Asst. Dist. Atty's Office, Beaumont, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

**OPINION**

RICK STRANGE, Justice.

The jury convicted Johnnie Howard Taylor of robbery, found that he had been previously convicted of a felony offense, and assessed his punishment at confinement for life. We affirm.

### I. *Background Facts*

Shirley Ann Hill went grocery shopping on May 14, 2005. She saw a man standing outside the store when she entered. He was still there when she left. The man asked Hill if he could borrow some money. She said no and walked away. He followed and asked for a ride. She said no. She loaded her groceries into her car and got inside. He then pulled her car door open, grabbed her around her neck and

waist, and started pulling her out of the car. She managed to keep one hand on the steering wheel, but her body was on the sidewalk. He stepped over her, got into the car, and began hitting her. When she let go of the steering wheel, he drove away.

Taylor was seen in a rural area the next day acting suspiciously. Local residents contacted the sheriff's office. Taylor attempted to leave the area, but he was detained by a deputy sheriff and was taken back to the location where he had been originally spotted. There the deputy sheriff found a stolen vehicle in a nearby shed. The vehicle's tires were gone, several other items such as the stereo were missing, and gas had been poured all over it. Taylor was arrested and was charged with unauthorized use of a motor vehicle.

A Beaumont police detective suspected that Taylor was responsible for the assault on Hill, and he put together a photo lineup consisting of six individuals who were bald or had short hair and showed it to Hill. He utilized bald or nearly bald men because Taylor was bald when arrested. Hill could not identify her attacker and told the detective that her assailant had long hair. The detective prepared a second photo lineup. In this one, each individual had hair. Hill identified Taylor as her attacker. Taylor was indicted for, and was then convicted of, robbery.

## II. *Issues*

Taylor challenges his conviction with two issues. Taylor contends first that the trial court erred by "electronically shack-ling" him and second that the evidence was factually insufficient.

## III. *Discussion*

### A. *Electronic Restraint.*

Taylor was involved in a disturbance following the jury's guilty verdict. The record does not elaborate on the disturbance beyond the trial court's statement prior to the start of the punishment phase that "the Court has been informed that you have expressed understandably some displeasure about the verdict yesterday" and Taylor's response:

> [Y]esterday the officer that brought me back, I mean, I was just saying that— that I felt like the judgment was wrong and I was mad but I never said nothing like—out of—like that I was going to jump on somebody. I never said nothing like that. I might have said something about that—that—that, you know, about the outcome of the case and that it was bull crap and all that; but I never said nothing about—derogatory like I was going to try to hurt somebody or nothing like that.

The trial court cautioned Taylor that it intended to maintain decorum and civility in the courtroom and that, if necessary, it would have Taylor shackled, gagged, or removed. Taylor promised to behave, asked the court to remove a protective shield from the courtroom, and advised the court that a stun belt had been strapped to him. The trial court agreed to remove the protective shield and verified that Taylor understood how the stun belt[1] he was wearing worked. The trial court then ad-

---

1. A stun belt is a device placed around a defendant's midsection or leg that uses an electric shock to temporarily disable the defendant if his actions pose a security threat. The belt is controlled by a remote device held by a security official in the courtroom. If the belt is activated, the defendant will receive a powerful electric shock sufficient to temporarily incapacitate him. *State v. Belcher*, 183 S.W.3d 443, 445 n. 1 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Simms v. State*, 127 S.W.3d 924, 928 (Tex.App.-Corpus Christi 2004, pet. ref'd).

vised Taylor that so long as he behaved himself he would be allowed to remain in the courtroom without shackles or a gag. There were no further incidents during the trial, and no further reference to the stun belt was made on the record.

### 1. Standard of Review.

■ The decision to use physical restraints must be made by the trial court on a case-by-case basis, and the use of such restraints will necessitate reversal only where the decision constitutes an abuse of discretion and results in harm. *Cooks v. State,* 844 S.W.2d 697, 722 (Tex.Crim.App. 1992). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Paschal v. Great W. Drilling, Ltd.,* 215 S.W.3d 437, 445 (Tex.App.-Eastland 2006, pet. denied).

### 2. Analysis.

■ Taylor did not object to the use of a stun belt. We have previously held that the failure to object to the use of shackles waived a subsequent due process complaint. *See Cedillos v. State,* 250 S.W.3d 145, 150 (Tex.App.-Eastland 2008, no pet.). There is no distinction between the two methods of restriction that would preclude the necessity for an objection to the use of a stun belt. Consequently, this issue has not been preserved for our review.

■ Furthermore, the record establishes no harm. Texas courts have found harm from the use of restraints in two instances: when the jury sees the restraint or when its use impedes a defendant's ability to confer with counsel. *Grant v. State,* 255 S.W.3d 642, 649 (Tex.App.-Beaumont 2007, no pet.). Neither instance is shown in the record.

■ First, there is no indication that the jury knew Taylor was wearing a stun belt. In fact, the record indicates that the trial court was initially unaware of it because it was brought to its attention by Taylor's counsel. When the jury is unaware that a defendant is being restrained, the use is harmless. *See Simms v. State,* 127 S.W.3d 924, 928 (Tex.App.-Corpus Christi 2004, pet. ref'd). Second, there is no evidence that Taylor's ability to confer with counsel was actually impeded. *Cf. State v. Belcher,* 183 S.W.3d 443, 449 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (deputy accidentally activated defendant's stun belt and, as a result, defendant was unable to confer with counsel concerning his peremptory strikes). Issue One is overruled.

### B. Factual Sufficiency.

Taylor next argues that the evidence is factually insufficient because he was not properly identified as the assailant.

### 1. Standard of Review.

■ To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex. Crim.App.2006). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id.* at 414–15.

### 2. Analysis.

■ Taylor's insufficiency argument focuses on two principal challenges to Hill's testimony. First, Hill did not mention any tattoos on Taylor's arms when she described him to the police; however, every other witness described them as a predominant identification feature. Second, Hill did not identify Taylor in the first photo lineup she was shown.

Hill testified that she had a good opportunity to look at her assailant. She saw a mark under his left eye but did not notice any tattoos on his arms. Hill was inter-

viewed at the scene by Beaumont police, and she provided a description of the assailant but did not refer to any tattoos. Hill told the police that her assailant had shoulder-length, dirty blond hair; that he was five feet five inches tall; and that he was wearing a dirty, white T-shirt and pants. At trial, Hill testified that Taylor was her assailant. Taylor removed his shirt to show Hill and the jury his tattoos. Hill testified that she did not see any tattoos at the time and that Taylor was wearing a shirt with sleeves that went "mid-ways" to his wrists and with a collar around his neck.

Hollis "Peanut" Gilfillian Jr. saw Taylor the next day lying in a ditch with four tires. Taylor was not wearing a shirt, and Peanut noticed that he had tattoos all over his arms. Peanut stopped at Wayne Wilbur's shop and told him what he had just seen. They called the sheriff's office and went back to the scene. They saw an individual trying to put a tire into the back of a Blazer. When the man left, they followed the Blazer until it was stopped by a sheriff's deputy. Wilbur saw appellant as he exited the Blazer and noticed that he had several tattoos on his arms. According to Wilbur, this was Taylor's most prominent identifying feature.

Sheriff's Deputy Alan Little was dispatched in response to Peanut and Wilbur's call, and he intercepted and stopped the Blazer they were following. Tonya Touche was driving. She had a male passenger who was acting suspiciously. Deputy Little noticed that the passenger appeared to have recently shaved his head because he had several small cuts with dried blood. Police records reflect that the passenger was five feet five inches tall. He identified himself as Roger Taylor. When Deputy Little began reading them their Miranda[2] warnings, the passenger said that that was unnecessary because all they were doing was getting tires from a car in a shed.

Touche told Deputy Little that Taylor had called her earlier, said that he had found some tires, and asked her to pick him up. She consented to a search of her car, and Deputy Little found bolts, caps, and lug nuts. He also found a dual-base screwdriver that can be used for breaking windows or taking stereos out of a vehicle. Deputy Little took Touche and Taylor back to the area where Peanut had seen the four tires and someone lying in a ditch. Deputy Little found a white Mercedes in a nearby shed.[3] One of the letters on the license plate had been altered with black electrician's tape. He ran the plates and discovered that the car had been reported stolen. The car's tires were gone, it smelled of gas because someone had poured gas all over it, and several items such as the stereo and visor were missing. Deputy Little also learned that Taylor's first name was Johnnie, not Roger. Taylor was arrested for unauthorized use of a motor vehicle. Touche subsequently turned over a trash bag with a stereo, visor, and mat that were missing from the Mercedes.

Beaumont Police Detective David Froman was assigned to Hill's robbery case. He determined that Taylor was a suspect, and he put together a photo lineup of six similar-looking white males including Taylor. Detective Froman used six bald or nearly bald men because Taylor was bald when he was arrested. Hill was unable to pick anyone out and told Detective Froman that her assailant had hair. Detective Froman found a picture of Taylor with hair and prepared a second lineup. This time she picked out Taylor.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Hill testified that she was driving a 1989 white Mercedes 420 SEL. The record does not indicate if this was her car.

The evidence supporting the verdict is neither so weak that the verdict is clearly wrong and manifestly unjust nor is the verdict against the great weight and preponderance of the conflicting evidence. Taylor's challenges go to Hill's credibility. Taylor's counsel effectively pointed out Hill's failure to notice Taylor's tattoos, but the jury could have considered her testimony that the assailant was wearing a shirt with sleeves and that, when Peanut and Wilbur saw Taylor, he had no shirt on. Counsel also effectively established Hill's failure to identify Taylor in the first lineup, but Hill described her assailant as having shoulder-length hair. The first lineup consisted of bald or nearly bald men. When she was shown a lineup of men matching her description of Taylor, she picked out Taylor. Moreover, there was evidence that Taylor had recently shaved his head. The jury could also consider that Hill identified Taylor in open court, that her description at the scene of the assailant's height matched Taylor's height, that the day following the robbery Taylor was acting suspiciously and was in possession of tires taken from a stolen white Mercedes, and that he provided the police with false identification information when stopped.

We cannot substitute our judgment for that of the jury. *Watson*, 204 S.W.3d at 407. Due deference must be given to its determination of the weight and credibility of the witnesses. *Johnson v. State*, 23 S.W.3d 1 (Tex.Crim.App.2000). Because the jury could have found Hill's testimony credible, the evidence is sufficient, and Issue Two is overruled.

### IV.  *Holding*

The judgment of the trial court is affirmed.