**Opinion filed August 7, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00239-CR

_____

## MARGARET COLLEEN FOSTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR37076**

## M E M O R A N D U M   O P I N I O N

The jury convicted Margaret Colleen Foston of four counts of the offense of credit card abuse. The jury assessed her punishment at confinement for two years and a $500 fine for each of the four counts. The trial court sentenced Appellant accordingly, with the periods of confinement to run concurrently. In one issue, Appellant challenges the sufficiency of the evidence to support her convictions. We affirm.

## I. *The Charged Offenses*

Appellant was charged by indictment with four counts of credit card abuse. A person commits the offense of credit card abuse if, with the intent to obtain a benefit fraudulently, she presents or uses a credit card with knowledge that the card has not been issued to her and is not used with the effective consent of the cardholder. TEX. PENAL CODE ANN. § 32.31(b)(1)(A) (West 2011). The offense is a state jail felony. *Id.* § 32.31(d).

## II. *The Evidence at Trial*

Debra White testified that she noticed some unauthorized charges to Eskimo Hut on her credit card bill for the month of June 2009. The credit card was a Coldwater Creek card issued through Chase Bank. White had given the card to her son, Jacob, to use for souvenirs and emergencies while he was on a mission trip to Africa. White asked Jacob whether he made the purchases at Eskimo Hut, and Jacob denied that he ever went there. White admitted that she occasionally purchased alcohol from Eskimo Hut but said that she always paid with cash, not a credit card. According to White, the last time she saw the credit card was when she handed it to Jacob before he got on the plane to go on the mission trip. Jacob never returned the card to White. After speaking with Jacob, White called the credit card company and the police station and reported the card stolen.

As part of White's report to the credit card company, she filled out and signed an Affirmation of Unauthorized Use form in which she identified the transactions that were unauthorized on her credit card account. White identified multiple unauthorized transactions that occurred early in June 2009, including the two unauthorized transactions from the Eskimo Hut in Midland and several from an H-E-B grocery store.

As part of White's report to the police department, White filled out and signed an Affidavit of Unauthorized Use. In the affidavit, White identified the

following unauthorized transactions from H-E-B: (1) three transactions on June 1, 2009, for the amounts of $30.23, $2.17, and $24.35; (2) one transaction on June 2, 2009, for the amount of $14.50; (3) two transactions on June 3, 2009, for the amounts of $24.83 and $38.73; and (4) one transaction on June 4, 2009, for the amount of $28.87. Four of these H-E-B transactions formed the bases for Appellant's convictions. White testified that she had never met Appellant or anyone with the same name as Appellant and that she had not given anyone consent to use the credit card except for her son, Jacob, for use on his mission trip and to purchase a membership to Gold's Gym upon his return. White also indicated that she had seen photographs of a person making the unauthorized purchases at H-E-B, and White identified Appellant as the person in the photographs.

Jacob White testified that he used the credit card on his travels to Africa during May 2009 and then used the card to purchase a Gold's Gym membership on May 31, 2009. Jacob testified that he did not drink alcohol and definitely did not make the purchases at Eskimo Hut. In addition, Jacob said that he did not do a lot of grocery shopping while he was at home in Midland because his mother did that. Jacob said that he did not make the purchases that were made on the card during June 2009 and that he did not know who made them. Jacob did not know where the credit card was; he did not remember ever giving the card back to his parents or retaining the card in his possession after the Gold's Gym membership purchase. Jacob said that he did not give the card to anyone else or give anyone else permission to use the card, and he did not know anyone with Appellant's name.

Ernest Gamez works for H-E-B Grocery Company as an area loss prevention manager. Gamez, as part of his job, performs internal investigations and also works with police regarding outside investigations. Gamez provides videos, photograph stills, and receipts as they are needed in the investigations. Gamez

3

covers loss prevention over the H-E-B store in Midland where the unauthorized transactions occurred. Gamez testified that the Midland H-E-B has a security system that records images of the checkout counters. Through Gamez's testimony, the State admitted four photographs from the recording system that depicted a person making a purchase at a checkout station (State's Exhibits 2, 3, 4, and 5), as well as four receipts that represented some of the unauthorized transactions (State's Exhibits 2A, 3A, 4A, and 5A). Gamez explained that the H-E-B security system was capable of matching the time stamp from the receipts to the photographs that came from the security system and that, based on his review of the State's Exhibits, each photograph accurately reflected the transactions from the four corresponding receipts.

Cody Reeves testified that he owns and operates the Eskimo Hut in Midland. Reeves identified Appellant as a "regular" and testified that she came in his store on a daily basis. Reeves testified that he provided police with copies of receipts made from certain purchases at the Eskimo Hut that corresponded with the allegedly unauthorized transactions from White's credit card. Reeves pinpointed the receipts from transactions made at his store according to the timeframe and the amount of each transaction.

Reeves testified that he knew who made the purchases even before the police asked him because Appellant was the only person who was buying Hurricane High Gravity drinks from his store at that time. In addition, Reeves viewed the photographs in State's Exhibits 2, 3, 4, and 5, and he identified Appellant as the person depicted in the photographs at the checkout counter in H E-B. Reeves knew what Appellant looked like because she was a regular in his store and because Reeves had once given her a ride from his store to her apartment when it was raining outside. According to Reeves, Appellant was wearing a Whataburger uniform in the photographs in State's Exhibits 2 and 3. Reeves stated

4

that he believed Appellant was working at Whataburger in 2009 because he had seen her there before and because Appellant had worn her Whataburger uniform when she came into the Eskimo Hut.

Rosie Rodriguez, a Detective in the Midland Police Department, testified that she was assigned to the credit card case at issue in July 2009. Detective Rodriguez obtained White's credit card statement and her signed Affidavit of Unauthorized Use. Detective Rodriguez testified that four transactions from the affidavit matched the receipts in State's Exhibits 2A, 3A, 4A, and 5A. During the investigation, Detective Rodriguez reviewed the credit card statement and contacted Reeves at the Eskimo Hut. Based on her conversation with Reeves, Detective Rodriguez identified Appellant as a suspect.

Detective Rodriguez reviewed the surveillance video recording from a 7-Eleven store where another unauthorized transaction occurred and was able to identify Appellant based on a photograph obtained from the Midland County Sheriff's Office. Detective Rodriguez then contacted Appellant, who cooperated with the investigation. Appellant admitted purchasing Hurricane drinks from the Eskimo Hut, but she denied that she used White's credit card to make any of those purchases. Appellant also admitted that she was the person in the 7-Eleven surveillance video, but she denied that she used White's credit card to make the purchase. Detective Rodriguez did not question Appellant about the H-E-B purchases because Detective Rodriguez had not yet obtained the information from those transactions. When Detective Rodriguez viewed the photographs from H-E-B in State's Exhibits 2, 3, 4, and 5, she identified Appellant as the person at the checkout counter and identified Appellant's Whataburger uniform in State's Exhibits 2 and 3.

Appellant testified that in June 2009, she lived in the Coventry Pointe Apartments by the Midland H-E-B grocery store. Appellant said that she was

5

working in private health care at the time and was not working at Whataburger, although she had worked at Whataburger from October 2008 to February 2009. Appellant testified that she had never met White or Jacob and that she had never worked at Gold's Gym. Appellant denied using anyone's credit card without authorization and said that she had no way of getting access to a credit card belonging to someone else. Appellant said that she did not have a credit card of her own but that she might have used her friend's credit card at the 7-Eleven. Appellant admitted to making purchases at the H-E-B by her apartment but said that she always paid cash for her purchases. In addition, Appellant admitted to making purchases at Eskimo Hut, but she said that she purchased and drank Steel Reserve 211 drinks, not Hurricane drinks.

When Appellant was shown State's Exhibits 2, 3, 4, and 5, she denied that she was the person in the photographs. Appellant said that she did not wear her hair like the person in the photographs and that she wore a baseball cap ninety percent of the time. Appellant also said that she did not have a car at the time, so there was no way for her to get to two businesses—a Shell gas station and a Church's Chicken—that were reported as locations of unauthorized transactions on White's credit card.

After Appellant denied working for Whataburger in June 2009, the State called Arturo Chavarria, the Group Director of Compliance and Government Affairs for Whataburger Restaurants, as a rebuttal witness. Chavarria's duties included extracting and obtaining or maintaining records, such as employment history data. Chavarria testified that State's Exhibit 7—Whataburger employment records—was an accurate copy of the information stored in Whataburger computers. According to Chavarria, the records demonstrated that Appellant was hired by Whataburger in December 2008 and was separated or terminated in September 2009. The employment records also showed that Appellant had

clocked in and out of work on June 3, 2009. Chavarria also viewed State's Exhibits 2 and 3, and he said that the person depicted in the photographs appeared to be wearing a Whataburger uniform.

Appellant was recalled after Chavarria testified. Appellant stated that she may have worked at Whataburger in June 2009 but that she could not remember the specific dates and did not intentionally mislead the jury.

## III. *Issue Presented*

Appellant challenges the sufficiency of the evidence to support her convictions. Specifically, Appellant contends that the evidence was insufficient to prove her identity as the person who committed the offenses.

## IV. *Standard of Review*

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

7

## V. *Analysis*

As we have previously stated, Appellant's complaint regarding the sufficiency of the evidence is confined to the issue of identity. Appellant argues that her identification could not be proved beyond a reasonable doubt because it was based on the faulty memory of Reeves and because there was no evidence to explain how White's credit card came into Appellant's possession.

The State is required to prove beyond a reasonable doubt that the accused is the person who committed the charged offense. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984). When a defendant contests the identity element of the offense, we are mindful that identity may be proven by direct evidence, circumstantial evidence, or even inferences. *Roberson v. State*, 16 S.W.3d 156, 157 (Tex. App.—Austin 2000, pet. ref'd). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We have reviewed the entire record using the *Jackson* standard, and we conclude that the evidence was sufficient to support the identification of Appellant as the person who used White's credit card to make the four unauthorized purchases at the H-E-B. Although the identification evidence is circumstantial, it is substantial. The evidence shows that White noticed unauthorized transactions on her credit card statement and reported these transactions to the credit card company and the Midland Police Department. The Midland Police Department contacted the retailers where the unauthorized transactions took place, including the H-E-B in Midland, and obtained surveillance photographs that depicted the checkout counter at the time of each corresponding transaction.

Those photographs showed the same individual conducting at least four transactions with White's credit card. White and Detective Rodriguez identified Appellant as the person in the photographs based on Appellant's in-court appearance, and Reeves identified Appellant as the person in the photographs based on his previous personal knowledge of Appellant's appearance. Witness testimony established that the person in the photographs was wearing a Whataburger uniform during at least two of the transactions at H-E-B, and there was evidence that Appellant worked at a nearby Whataburger at the time of the alleged offense. In addition, Appellant lived in the apartment complex near the H-E-B and admitted to making purchases there. Reeves also connected Appellant to unauthorized transactions using the same credit card at his store.

Although Appellant denied that she used White's credit card to make any transactions and argues on appeal that Reeves's memory was faulty, the credibility of testifying witnesses is an issue for the jury to decide. *See Taylor v. State*, 279 S.W.3d 818, 822–23 (Tex. App.—Eastland 2008, pet. ref'd). Furthermore, the fact that the evidence does not show how Appellant came into possession of White's credit card is not determinative. "Possession" is not an element of the offense of credit card abuse; nevertheless, the jury could have inferred Appellant's possession based on the card being lost and Appellant's apparent use of the card in an unauthorized manner. Viewing all the evidence in the light most favorable to the verdict and giving proper deference to the jury's credibility determinations, we conclude that a rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt. Appellant's sole issue is overruled.

## VI. *This Court's Ruling*

We affirm the judgments of the trial court.


           MIKE WILLSON

           JUSTICE


August 7, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

10