

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00097-CR

_____

WILLIE FRANK JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,295

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Near some Greenville apartments, Willie Frank Jackson stood over Steven Ray Cook—as Cook lay on the ground after having been shot in the leg by Jackson—pointed his gun at Cook, and demanded that Cook tell him the location of Cook's wallet. After being told that the wallet was in the console of Cook's nearby truck, Jackson was seen rummaging through Cook's truck. The wallet was later found, less the forty dollars previously in it, along the path of Jackson's departure from the scene.

Jackson was convicted of aggravated robbery and, after enhancement of the charges to habitual offender status, was sentenced to ninety years' incarceration. We affirm the trial court's judgment, because (1) legally sufficient evidence shows Jackson's theft and (2) Jackson failed to preserve his complaint of wrongful electronic restraint.

*(1)   Legally Sufficient Evidence Shows Jackson's Theft*

Pointing to a perceived lack of evidence of theft, Jackson claims the evidence is insufficient to support his aggravated robbery conviction. We disagree.

In evaluating legal sufficiency of the evidence, we review all evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Brown v. State*, 333 S.W.3d 606, 608 (Tex. App.— Dallas 2009, no pet.). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. In this case, Jackson committed aggravated robbery if (1) Jackson committed theft of property with the intent to obtain or maintain control of that property and (2) in the course of this theft, Jackson intentionally, knowingly, or recklessly caused serious bodily injury to Cook by shooting Cook in the leg. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). Jackson disputes only the theft element of aggravated robbery. Theft is the unlawful appropriation of property, without the effective consent of the owner, with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2014).

The record indicates that Cook was visiting a friend at an apartment complex in Greenville on the evening of the robbery. Cook left the apartment complex around 7:00 p.m. to go to a convenience store. Cook returned to the apartment complex a short time later, parked his truck, and noticed that Jackson was walking toward him. Jackson was wearing an oven mitt which concealed a gun. After striking Cook in the face, Jackson pointed the gun directly at Cook's head and pulled the trigger. The gun merely clicked. Jackson told Cook, who was seated in the driver's seat of his truck with the door open, "[T]hat one's free. . . .You better move." Cook did not

3

understand what Jackson wanted. At that point, Jackson shot Cook in the lower leg. Jackson again demanded that Cook move. Cook got out of the truck and began to trot off, falling after about thirty feet. After Cook fell, he saw Jackson standing over him with the gun pointed at his face. When Jackson asked Cook where his wallet was, Cook told him it was in the console of his truck. Cook then saw Jackson rummaging through his truck, after which Jackson began to walk away from the truck. Cook was able to make his way back to his friend's apartment, where he told the friend of his encounter with Jackson and cleaned his leg wounds. Cook, believing his wounds were not serious, bandaged his leg and then asked his friend to find out what was missing from his truck.

The following day, Cook returned to the apartments to check on his truck and discovered that the truck keys were missing. Cook's wallet was not in the truck, nor was a .22 caliber Stinger hand gun he kept in the console. After walking in the general direction of Jackson's route of departure on the previous day, Cook found his wallet lying on the ground. He discovered, though, that forty dollars was missing from the wallet. After reporting the crime to the police, Cook went to the hospital.

Jackson claims this evidence fails to show that he actually deprived Cook of his money and gun. He claims that, because Cook was bleeding after the blow to his face, he was unable to clearly see whether Jackson took the missing items from Cook's truck. He further claims that, because Cook's friend looked in the truck after Jackson left to determine if anything was missing and because the truck might have been left unlocked in the parking lot overnight, it is mere speculation

4

to conclude Jackson took money from Cook's wallet as well as the small gun that was stored in the truck's console.

As described above, after Cook told Jackson that his wallet was in the console of his truck, he witnessed Jackson rifling through the contents of the truck and then leaving the apartment parking lot on foot. The following day, Cook found his wallet in Jackson's path of travel away from the parking lot. The wallet was missing the forty dollars, and Cook's gun was missing from the truck's console. That Cook's vision might have been impaired due to bleeding from a wound is a factor for the jury to consider and resolve. The jury also heard testimony that Cook's friend had access to the truck and that the truck could have been left unlocked overnight. These were likewise factors for the jury to consider and resolve. The fact remains, however, that Jackson rifled through the console before he left the parking lot that day—before anybody else could have possibly done so, including Cook's friend. Considered in the light most favorable to the jury's verdict, a rational jury could have found, beyond a reasonable doubt, the elements of aggravated robbery. The evidence was sufficient to support the jury's verdict.

*(2)*    *Jackson Failed to Preserve His Complaint of Wrongful Electronic Restraint*

During the punishment phase of trial, Jackson was asked to remove his shirt so that the testifying witness could view his tattoos. Evidently, under his shirt, Jackson was wearing a shock belt restraint[1] when the request was made. Jackson complains of trial court error in failing to make

---

[1]A shock belt or stun belt

> is a device placed around a defendant's midsection that uses an electric shock to temporarily disable the defendant if his actions pose a security threat. The belt is controlled by a remote device held by a security official in the courtroom. If the belt is activated, the defendant will receive a powerful electric shock sufficient to temporarily incapacitate him.

specific findings on the record to justify imposition of the restraint at trial. Jackson further contends that, because the jury was able to see that he was wearing an electronic restraint, he is entitled to a new punishment trial.

The issue arose in connection with Jackson's tattoos, which the State sought to prove were evidence of Jackson's membership in a prison gang known as the Mandingo Warriors. The State questioned David Johnson, with the Texas Department of Criminal Justice, about tattoos indicative of Mandingo Warrior membership. Although Johnson had viewed photographs of Jackson's tattoos, he had never met Jackson. When the State sought to elicit testimony from Johnson authenticating photographs of Jackson's tattoos, Jackson objected, stating that, because Johnson did not take the photographs, he was not the proper person to authenticate them. In response, the State asked "that the defendant remove his shirt and show the jury so that they can all properly authenticate it . . . ." The following colloquy ensued:

[DEFENSE COUNSEL]: You want to take your shirt off --

[THE STATE]: We can do that in private or in front of the jury.

THE COURT: All right.

[DEFENSE COUNSEL]: So do you want to do it in front of the jury or do you want to do it in just a little bit?

[DEFENDANT]: I'll do it right there in front of the jury. It don't matter.

*State v. Belcher*, 183 S.W.3d 443, 445 n.1 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citation omitted); *see Taylor v. State*, 279 S.W.3d 818, 820 n.1 (Tex. App.—Eastland 2008, pet. ref'd).

THE COURT:  All right.  If you'll step over here and raise your shirt and show them your tattoos.

[DEFENSE COUNSEL]:  Hold on, Your Honor, just a second.  Can we approach?

Just a second, Mr. Jackson.

They put a shock belt --

[THE STATE]:  If he's willing to take his shirt off, then let him take his shirt off.

[DEFENSE COUNSEL]:  No.  No.  No.  No.  No.  What I'm saying is --

THE COURT:  He's already taken his shirt off.

[DEFENSE COUNSEL]:  Huh?

THE COURT:  His shirt's off.

[DEFENSE COUNSEL]:  Oh, nevermind.  Nevermind.

THE COURT:  All right.  If you'd step over in front of the jury, sir.

[THE STATE]:  And since this is the witness that's testifying, if we could show the witness?  That's really the only person I need to see them.
That's far enough.

THE COURT:  All right.  Let the record reflect the defendant has removed his shirt and has marched in front of the jury so they could see any tattoos that he might have.

As is clear from the foregoing colloquy, defense counsel did not object to the use of an electronic restraint or to the removal of Jackson's shirt in front of the jury.  While counsel seemed to indicate that Jackson was wearing a shock belt, no objection was stated on that or on any other basis.  Further, when counsel learned that Jackson had removed his shirt, any objection—to the

7

extent one was articulated—was abandoned when counsel told the court "nevermind [sic]." No previous or subsequent mention of a shock belt appears in the record.

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the use of physical restraints visible to the jury unless the trial court determines that such restraints are justified to ensure physical security, escape prevention, or courtroom decorum. *Deck v. Missouri*, 544 U.S. 622, 628 (2005), *abrogated on other grounds by Fry v. Pliler*, 551 U.S. 112 (2007). However, even the most basic rights of criminal defendants are subject to waiver. *Perez v. United States*, 501 U.S. 923, 936 (1991) (citing *United States v. Gagnon*, 470 U.S. 522, 528 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine v. United States*, 362 U.S. 610, 619 (1960) (failure to object to closing of courtroom is waiver of right to public trial); *Segurola v. United States*, 275 U.S. 106, 111 (1927) (failure to object constitutes waiver of Fourth Amendment right to be free from unlawful search and seizure)). Here, Jackson did not object to the use of the electronic restraint at any point during the trial.

"For a party to preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see* TEX. R. APP. P. 33.1. "Almost all error—even constitutional error—may be forfeited if the appellant failed to object." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *see also Taylor v. State*, 279 S.W.3d 818, 821 (Tex. App.—Eastland 2008, pet. ref'd) (issue of whether defendant properly restrained by use of stun belt at punishment phase not preserved for appellate review where defendant failed to object); *Cedillos v. State*, 250 S.W.3d 145, 150 (Tex. App.—Eastland 2008, no pet.) (appellant waived constitutional due process

8

complaint regarding shackling during trial because he failed to object on record); *see also Kelley v. State*, No. 05-09-01438-CR, 2012 WL 2628074, at \*5–6 (Tex. App.—Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication) (complaint of shackling at trial not preserved for appellate review when defendant failed to object at trial); *Pereida v. State*, No. 13-09-00354-CR, 2010 WL 2783743, at \*6 (Tex. App.—Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication).

The record here does not contain an explicit description of the reasons for the electronic restraint. The record likewise does not indicate—assuming the restraint was visible to the jury when Jackson removed his shirt—that the jury perceived the device as an electronic restraint. These particulars are missing because Jackson did not object. Consequently, the issue has not been preserved for our review[2] and is therefore overruled.

---

[2]Even if Jackson had preserved this complaint for our review and error was determined to have occurred, it is unlikely Jackson was prejudiced. The event occurred during the trial's punishment phase. After conviction, the defendant no longer enjoys the presumption of innocence. *See Deck*, 544 U.S. at 632. Texas cases have also held that the presumption of innocence does not apply at the trial's punishment phase. *Marquez v. State*, 725 S.W.2d 217, 227 (Tex. Crim. App. 1987), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); *see, e.g.*, *Lewis v. State*, 866 S.W.2d 272, 277 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The punishment phase here involved four prior felony convictions alleged by the State. Jackson pled "true" to three of these prior conviction allegations, and the trial court instructed the jury to find each such conviction allegation to be true. Jackson pled "not true" to the fourth alleged prior conviction, involving the possession of a deadly weapon in a penal institution. The three prior conviction allegations to which Jackson pled true were sufficient to enhance his punishment range to that of a habitual felony offender. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014).

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     May 14, 2015
Date Decided:       May 15, 2015

Do Not Publish